IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GENERAL HOLDING, INC.,                    No.  CIV.S-04-2749 DFL DAD
a California corporation,

          Plaintiff,

     v.                                   FINDINGS AND RECOMMENDATIONS

BANCROFT VENTURES LIMITED,
an Isle of Man corporation,
et al.,

          Defendants.

_____/

          This matter came before the court on August 26, 2005, for

hearing on plaintiff General Holding, Inc.'s motion for default

judgment against defendant Bancroft Ventures Limited.  David Priebe

and Joseph Wilson appeared on behalf of plaintiff General Holding,

Inc.[1]  There was no appearance on behalf of defendant Bancroft

Ventures Limited.  Having considered all written materials submitted

_____

          [1]  Don Hancock, the president, chief executive officer and owner
of plaintiff General Holding, Inc. was present at the hearing.

1

with respect to the motion, and after hearing oral argument, for the reasons set forth below the court will recommend that plaintiff's motion be granted.

## PROCEDURAL BACKGROUND

Plaintiff General Holding, Inc. ("General Holding") initiated this action by filing its complaint on December 30, 2004. Plaintiff filed an amended complaint on March 4, 2005.  The named defendants in the amended complaint are Bancroft Ventures Limited ("Bancroft"); Derivium Capital (USA), Inc. ("Derivium USA"); Derivium Capital, LLC ("Derivium"); and Charles Cathcart.

While defendant Bancroft initially appeared in this action through counsel, by order filed June 9, 2005, the assigned district judge granted Bancroft's counsel's motion to withdraw.  That order required Bancroft to appear through new counsel by July 8, 2005, or face default proceedings.  Bancroft did not appear through new counsel.  Therefore, pursuant to plaintiff's request, on July 12, 2005, the Clerk of the Court entered default against Bancroft.  On July 19, 2005, plaintiff filed the instant motion along with a declaration by counsel addressing damages.  Despite being served with all papers filed in connection with the motion for default judgment, defendant Bancroft has not responded to it.[2]  Defendants Derivium

/////

/////

/////

---

[2]  As requested, plaintiff filed proof of service of the motion on defendant Bancroft following the hearing.  (See Doc. no. 41.)

2

1   USA, Derivium and Cathcart have also failed to respond to the

2   motion.[3]

3                            **LEGAL STANDARDS**

4           Federal Rule of Civil Procedure 55(b)(2) governs

5   applications to the court for entry of default judgment.  Upon entry

6   of default, the complaint's factual allegations regarding liability

7   are taken as true, while allegations regarding the amount of damages

8   must be proven.  Dundee Cement Co. v. Howard Pipe & Concrete

9   Products, 722 F.2d 1319, 1323 (7th Cir. 1983)(citing Geddes v. United

10  Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys.,

11  Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  It is

12  improper for the court to consider liability issues without first

13  providing notice to plaintiff that the merits will be addressed.

14  Black v. Lane, 22 F.3d 1395, 1398 (7th Cir. 1994).  Where damages are

15  liquidated (i.e., capable of ascertainment from definite figures

16  contained in the documentary evidence or in detailed affidavits),

17  judgment by default may be entered without a damages hearing.  See

18  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

19  however, require "proving up" at an evidentiary hearing or through

20  other means.  Dundee, 722 F.2d at 1323-24; see also James v. Frame,

21  6 F.3d 307, 310 (5th Cir. 1993).

22          Granting or denying default judgment is within the court's

23  sound discretion, see Draper v. Coombs, 792 F.2d 915, 924-25 (9th

24  Cir. 1986) (citations omitted), and the court is free to consider a

25  _____

26      [3]  Defendants Derivium USA, Derivium and Mr. Cathcart were
    served with the motion through their counsel, Juan Alberto Torres.

1 variety of factors in exercising that discretion, see Eitel v.

2 McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The court may

3 consider such factors as:

4        (1) the possibility of prejudice to the
       plaintiff, (2) the merits of plaintiff's

5        substantive claim, (3) the sufficiency of the
       complaint, (4) the sum of money at stake in the

6        action, (5) the possibility of a dispute
       concerning material facts, (6) whether the

7        default was due to excusable neglect, and (7) the
       strong policy underlying the Federal Rules of

8        Civil Procedure favoring decisions on the merits.

9 Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice, ¶ 55-

10 05[2], at 55-24 to 55-26).

11 **ANALYSIS**

12       This action arises from a stock loan transaction involving

13 numerous individuals and entities located in several countries.  The

14 relevant events span a number of years and involve allegedly

15 fraudulent activity.  In sum, the detailed allegations of the well-

16 drafted complaint indicate as follows:

17       Plaintiff General Holding is a California real estate

18 development corporation.  In 1999, defendant Derivium Capital, LLC

19 made a loan to plaintiff under a structure Derivium called the 90%

20 Stock Loan program.  Under that program plaintiff pledged and

21 transferred to Derivium 272,000 shares of stock in a New York Stock

22 Exchange-traded company called MDC Holdings ("MDC"), then worth

23 approximately $4.6 million, as collateral for a loan of approximately

24 $4.1 million.  Derivium promised to return the stock collateral once

25 plaintiff paid the loan balance.  Derivium also represented that it

26 would engage in hedging strategies developed by its principal,

4

defendant Charles Cathcart, that would allow it to fulfill its promise to return the stock even if it appreciated in value by the end of the loan term.

As the 1999 loan approached its November, 2001, ending date, plaintiff requested a new loan collateralized by the MDC stock, which had appreciated. Derivium assured plaintiff that the new loan had been approved and that funding would be forthcoming. However, that funding did not occur as promised. Derivium finally disclosed to plaintiff in March, 2002, that the true lenders under the 90% Stock Loan program were previously undisclosed foreign firms: defendant Bancroft, an Isle of Man company, and an Irish/Channel Islands company called DDA, which is not a party to this action. Plaintiff then demanded to pay off the loan balance and obtain the return of its stock.

Bancroft responded to plaintiff's demand by indicating that it had erred as to the term of the hedge it had taken on the loan; needed time to unwind the hedge; and would return the MDC stock to plaintiff in November, 2002. Approximately three years later, Bancroft has yet to return the stock which remains as collateral for a loan, the term of which expired in November of 2001. Indeed, the amended complaint alleges that all Derivium did in fact was sell the stock at the inception of the transaction; use 90% of the proceeds to fund the loan; and put the other 10% in the bank accounts of Bancroft

/////

/////

/////

1    and DDA.  Derivium acknowledges the obligation to return the stock

2    but blames Bancroft for the difficulties experienced in this regard.[4]

3            Through this lawsuit plaintiff seeks to recover the loan

4    collateral which is now worth over $40 million as well as any decline

5    in the value of that collateral caused by defendants' continuing

6    conversion thereof.  Plaintiff also seeks consequential damages.[5]

7    The amended complaint alleges the following nine claims for relief:

8    (1) violation of the Racketeer Influenced and Corrupt Organizations

9    Act ("RICO") (against Bancroft, Derivium USA and Cathcart); (2)

10   tortious interference with contract (against Bancroft); (3)

11   conversion (against Bancroft and Cathcart); (4) breach of contract

12   and third-party contract (against Bancroft); (5) aiding and abetting

13   breach of fiduciary duty (against Bancroft, Cathcart and Derivium

14   USA); (6) fraud (against Cathcart); (7) fraud (against Bancroft and

15   Cathcart); (8) money had and received (against Bancroft, Cathcart and

16   /////

17   /////

18   /////

19   _____

20        [4]  The amended complaint speaks mostly of Derivium (i.e.,
     Derivium Capital, LLC) as opposed to Derivium USA (i.e., Derivium
21   Capital (USA), Inc.).  However, according to the amended complaint
     Derivium USA was formed in 2002 as part of a scheme to continue the
22   sham stock loan business of Bancroft and Derivium.  The amended
     complaint alleges that each of the defendants was the agent of the
23   other defendant and that each defendant acted with the full knowledge
     of each other defendant such that all defendants are subject to joint
24   and several liability.

25        [5]  The amended complaint prays for still other types of
     injunctive relief and damages, such as treble damages on the RICO
26   claim and punitive damages, but such relief is not sought in the
     instant motion.

                                    6

1  Derivium USA); and (9) fraudulent conveyance (against Bancroft,

2  Cathcart, Derivium and Derivium USA).[6]

3          Weighing the factors outlined in <u>Eitel v. McCool</u>, 782 F.2d

4  at 1471-72, the undersigned has determined that default judgment

5  against defendant Bancroft is appropriate.  Defendant has made no

6  showing that its failure to defend was due to excusable neglect.  The

7  complaint is sufficient, and while the amount of money at stake is

8  substantial, that amount is merely a result of the nature of the

9  business transaction in which the parties engaged.  There also is no

10 apparent possibility of a dispute concerning the material facts

11 underlying the action and there is no reason to doubt the merits of

12 plaintiff's substantive claims.  The relevant factors weigh in

13 plaintiff's favor.  Accordingly, while recognizing the public policy

14 favoring decisions on the merits, the court will recommend that

15 default judgment be granted.

16         Upon determining that entry of default judgment is

17 warranted, the court must next determine the terms of the judgment.

18 According to the amended complaint, in June of 2004, defendant

19 Cathcart informed plaintiff for the first time that the loan made

20 through Derivium never had been properly hedged.  The next month,

21 plaintiff filed an arbitration demand against Derivium.  On June 13,

22 2005, the arbitrator found for plaintiff on its claims for breach of

23 contract, fraud and conversion.  The arbitrator awarded plaintiff

24

25     [6]  Thus, the only claim not brought against defendant Bancroft
   is the sixth claim for relief for fraud, which is brought against
26 defendant Cathcart only.

1  $46,558,705.08 in actual damages.  This actual damages award was

2  calculated by combining the value of the MDC stock collateral owed to

3  General Holding (the published market value of 517,705 shares of MDC

4  stock as of the date of the arbitration hearing ($40,588,072.00) less

5  the loan balance at that time ($4,618,937.43)) and consequential

6  damages of $10,589,570.51, which figure was determined by the

7  arbitrator based largely on the testimony of Don Hancock.

8         Through the instant motion, plaintiff seeks the return of

9  the 517,705 shares of MDC stock; monetary damages of $12,845,755.68;

10  and post-judgment interest.  This is consistent with the prayer for

11  relief in the amended complaint.  It also is supported by the

12  detailed allegations of the amended complaint; plaintiff's memorandum

13  of points and authorities; the arbitration award; portions of the

14  record of the March 8-10, 2005, arbitration between plaintiff and

15  Derivium Capital; and the declaration of Mr. Hancock.  In this

16  regard, as explained in plaintiff's Post-hearing Submission Regarding

17  the Motion for Default Judgment, the monetary damages of

18  $12,845,755.68 is made up of $6,688,748.60 for the decline in the

19  value of the collateral caused by defendants' continuing conversion,[7]

20  plus $10,589,570.71 in consequential damages as testified to by Mr.

21

22         [7] The $6,688,748.60 is the difference between the value of the
MDC stock at its highest point in value between the dates of May 13,
2002 (the date plaintiff demanded to pay off the loan balance and

23  obtain return of the MDC stock) and September 2, 2005 (the date of
plaintiff's post-hearing submission).  Plaintiff has established that

24  the value of the MDC stock at its highest point in between those
dates was $45,646,049.85 and that the value of the MDC collateral on

25  September 2, 2005 was $38,957,301.25.  Thus, plaintiff seeks to
recover $6,688,748.60 as the decline in the value of the collateral

26  caused by defendants' continuing conversion thereof.

8

Hancock at the arbitration hearing, less the loan balance of

$4,432,563.63.  Therefore, the undersigned will recommend that the

assigned district judge grant plaintiff's motion for default

judgment.

Finally, plaintiff requests certification under Federal

Rule of Civil Procedure 54(b).  Rule 54(b) requires as follows:

> When more than one claim for relief is presented
> in an action ... the court may direct the entry
> of a final judgment as to one or more but fewer
> than all of the claims or parties only upon an
> express determination that there is no just
> reason for delay and upon an express direction
> for the entry of judgment.

Fed. R. Civ. P. 54(b); see Baker v. Limber, 647 F.2d 912, 916 (9th

Cir. 1981)(applying Rule 54(b) to default judgment).  With respect to

judgments under Rule 54(b), the Ninth Circuit has stated as follows:

> Judgments under Rule 54(b) must be reserved for
> the unusual case in which the costs and risks of
> multiplying the number of proceedings and of
> overcrowding the appellate docket are outbalanced
> by pressing needs of the litigants for an early
> and separate judgment as to some claims or
> parties.  The trial court should not direct entry
> of judgment under Rule 54(b) unless it has made
> specific findings setting forth the reasons for
> its order.  Those findings should include a
> determination whether, upon any review of the
> judgment entered under the rule, the appellate
> court will be required to address legal or
> factual issues that are similar to those
> contained in the claims still pending before the
> trial court.  A similarity of legal or factual
> issues will weigh heavily against entry of
> judgment under the rule, and in such cases a Rule
> 54(b) order will be proper only where necessary
> to avoid a harsh and unjust result, documented by
> further and specific findings.

Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962, 965

(9th Cir. 1981).

1    Here, the court finds that it is unlikely that Bancroft

2    will appeal any entry of default judgment since it did not even file

3    any opposition to the pending motion.  If Bancroft were to proceed to

4    appeal, the court recognizes that plaintiff's claims against

5    defendants arise from the same factual events and that such a factual

6    similarity weighs heavily against Rule 54(b) certification.

7    Nonetheless, the papers filed in support of plaintiff's motion

8    indicate that Bancroft is a fleeting entity.  Bancroft has abandoned

9    other lawsuits in the United States and ceased doing business here

10   only to withdraw to the Isle of Man and then to other foreign

11   jurisdictions.  Any further delay would prejudice plaintiff's attempt

12   to begin enforcing a judgment against Bancroft, which would amount to

13   a "harsh and unjust result."  Morrison-Knudsen Co., Inc., 655 F.2d at

14   965.

15   Further, the nature of liability sought by plaintiff favors

16   the entering of judgment as requested.  The second and fourth claims

17   brought against Bancroft in the amended complaint are for tortious

18   interference with contract and breach of contract and third-party

19   contract, respectively, and brought against Bancroft solely.  See

20   Angelo Iafrate Const., LLC v. Potashnick Const., Inc., 370 F.3d 715,

21   722 (8th Cir. 2004)("Parties are not similarly situated and a default

22   judgment does not establish inconsistent judgments, however, if the

23   liability of the defaulting party is based on independent wrongful

24   acts or a legal theory distinct from the one under which the

25   answering party prevailed.").  The other claims, while brought

26   against Bancroft along with other defendants, involve joint and

1  several liability.  See In re Uranium Antitrust Litigation, 617 F.2d

2  1248, 1256-58 (7th Cir. 1980) (affirming default judgment in

3  antitrust case on grounds that, because liability in antitrust cases

4  was joint and several, nonliability of some defendants would not

5  preclude liability of other defendants).  Therefore, under the

6  circumstances, the undersigned further will recommend that the

7  district judge expressly determine that there is no just reason for

8  delay and direct the entry of judgment against defendant Bancroft.

9                                **CONCLUSION**

10         Accordingly, for the reasons stated above, the court HEREBY

11 RECOMMENDS that:

12         1.   Plaintiff's motion for default judgment be granted;

13         2.   The district court expressly determine pursuant to Rule

14 54(b) that there is no just reason for delay and direct the entry of

15 default judgment against defendant Bancroft on plaintiff's claims

16 brought against it; and

17         3.   Defendant Bancroft be directed to (1) return to

18 plaintiff 517,705 shares of MDC Holdings stock, plus any additional

19 shares that may be issued as dividends subsequent to the date of any

20 judgment entered herein; (2) pay monetary damages of $12,845,755.68;

21 and (3) pay post-judgment interest.

22         These findings and recommendations are submitted to the

23 United States District Judge assigned to the case pursuant to the

24 provisions of 28 U.S.C. § 636(b)(l).  Within ten (10) days after

25 being served with these findings and recommendations, any party may

26 file written objections with the court and serve a copy on all

parties.   Such a document should be captioned "Objections to Findings

and Recommendations."   The parties are advised that failure to file

objections within the specified time may waive the right to appeal

the District Court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

Cir. 1991).

DATED: November 15, 2005.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.civil\generalholding.default.judg.f&r.v2